NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LEGALIZE MARIJUANA PARTY,
EDWARD FORCHION,

Plaintiff,

v.

STATE OF NEW JERSEY,
LT GOVERNOR GAUDAGNO,

Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-6032 (JBS/AMD)

**MEMORANDUM OPINION**

**SIMANDLE, Chief Judge:**

In this action, pro se Plaintiff Edward Forchion and his party, the Legalize Marijuana Party, allege that the State of New Jersey and Lt. Gov. Kimberly Gaudagno have committed "election fraud" by not including Mr. Forchion and the Legal Marijuana Party on the ballot for the upcoming election for representative of New Jersey's 3rd Congressional District. Plaintiff asks this Court to enjoin the printing of the ballot until a recount can be ordered. Because Plaintiff seeks to bring this action in forma pauperis, the Court has an obligation to screen the Complaint under 28 U.S.C. § 1915(e)(2). The Court finds as follows:

1. Because Plaintiff's application affidavit states that he is indigent, the Court will, pursuant to 28 U.S.C. § 1915,

permit the Complaint to be filed on behalf of Edward Forchion only, without prepayment of fees, and will direct the Clerk of Court to file the Complaint.

2. Filing in forma pauperis is not available to the "Legalize Marijuana Party," if that entity exists. In the Complaint, Forchion has placed "Legalize Marijuana Party" into the caption as if it were a plaintiff, but he does not identify it as a plaintiff in the body of the Complaint. Instead, he asserts that the Legalize Marijuana Party is just himself, stating, "The NJ Appeals court is not acting to ensure democracy is protected, instead [it] is choosing to help state officials censor the Legalize Marijuana Party (myself) by inaction." Compl. at 3. In other words, it appears that "Legalize Marijuana Party" is not an entity separate from Mr. Forchion himself. If it is a separate entity, it must pay the filing fee as it is not eligible for in forma pauperis status under 28 U.S.C. § 1915(a)(1), which permits the in forma pauperis commencement of a civil action only by a "person [who] is unable to pay such fees . . . ." A political party is not a "person" under this statute, Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 196 (1993), and therefore any request for waiver of filing fees by the "Legalize Marijuana Party" must be denied.

3. Federal Rule of Civil Procedure 8 requires that a claim for relief contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. Pro. 8(a)(1). The Court may dismiss a complaint that lacks such a statement. Jackson v. Sec'y Pa. Dept. of Corr., 438 Fed. Appx. 74, 75 (3d Cir. 2011) (affirming district court's dismissal of pro se plaintiff's complaint in part because it lacked a short and plain statement of the court's jurisdictional grounds). Because Plaintiff Forchion has stated no grounds for the court's jurisdiction, the Complaint must be dismissed for failure to comply with Rule 8(a)(1). Benvenuto v. Conn. Gen. Life Ins. Co., 678 F.Supp. 469, 471 (D.N.J. 1988).

4. Plaintiff's Complain also requires dismissal under 28 U.S.C. § 1915(e)(2)(B). Under Section 1915(e)(2)(B), a court must dismiss a case if it determines that the action fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). In determining the sufficiency of a pro se complaint, the Court must liberally construe the allegations in favor of the plaintiff, and must accept as true all factual allegations. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The complaint must contain sufficient factual matter which, accepted as true, would state a claim for relief that is

plausible on its face. A claim is facially plausible when the plaintiff pleads enough factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court will not credit legal conclusions or "recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 678 (2009); Santiago v. Warminster Tp., 629 F.3d 121, 128 (2010).

5. Plaintiff's Complaint as presently written fails to state a claim over which a federal court would have subject matter jurisdiction. State or local election law matters are "for the most part a preserve that lie[] within the exclusive competence of the state courts." Bonas v. Town of North Smithfield, 265 F.3d 69, 74 (1st Cir. 2001). The "general rule" is that "federal courts do not superintend the administration of local electoral contests." Afran v. McGreevey, 115 Fed. Appx. 539, 544 (3d Cir. 2004); see also Powell v. Power, 436 F.2d 84, 86 (2d Cir. 1970) (declining to hear plaintiff's claims of irregular voting because "[a]bsent a clear and unambiguous mandate from Congress, we are not inclined to undertake such a wholesale expansion of our jurisdiction into an area which, with certain narrow and well-defined exceptions, has been in the exclusive cognizance of the state courts."). There are a few narrow exceptions under which federal courts may intervene in

electoral disputes. In Afran v. McGreevey, the Third Circuit recognized two such exceptions: when a group of voters suffer a denial of equal protection, and when "a colorable claim lies for a violation of substantive due process" because "organic failures in a state or local election process threaten to work patent and fundamental unfairness." Afran, 115 Fed. Appx. at 544. But generally, "where adequate state corrective procedures exist," "local election irregularities, including even claims of official misconduct, do not usually rise to the level of constitutional violations." Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir. 1978).

6. Plaintiff states that he submitted 208 signatures to support his petition for nomination of his party to the ballot, but that his party was excluded from the ballot because only 97 signatures were determined to be valid. On October 3, 2014, Plaintiff filed a Motion for Emergency Review requesting that this Court review his Complaint. [Docket Item 2.] Plaintiff attached two newspaper articles to his motion, both published by the Times of Trenton. Both articles stated that Plaintiff had participated in a 15-hour administrative law hearing on the signatures he collected, during which more than half of the signatures were invalidated by an administrative law judge ("ALJ"). Such facts are insufficient to show that there was an equal protection violation, or that "broad-gauged unfairness"

permeated the process. Griffin, 570 F.2d at 1077. Nor does the invalidation of signatures by the ALJ indicate that the state's administrative and judicial corrective process has failed to provide fundamental fairness. Id. at 1078. As currently written, Plaintiff's allegations do not support a constitutional violation, and this Court lacks jurisdiction to entertain Plaintiff's Complaint. Powell, 436 F.2d at 86.

7. Even if this Court had jurisdiction over Plaintiff's claim, the Younger doctrine would likely bar the present action because Plaintiff has a pending case before the Superior Court Appellate Division. See Younger v. Harris, 401 U.S. 37 (1971). Plaintiff filed an appeal to the Appellate Division on June 19, 2014.[1] The Complaint states, "[t]he New Jersey Appeals court instead opting to –- time to expire." There is no indication that Plaintiff's case has been dismissed.

8. According to the latest newspaper article from the Times of Trenton, dated September 26, 2014, attached with Plaintiff's Emergency Motion, Plaintiff filed an appeal with the Superior Court Appellate Division, but his appeal "stalled until [Plaintiff] could produce more than $3,500 worth of transcripts"

[1] Plaintiff's complaint does not state the year in which the appeal was filed, but because the filing of the appeal appears at the end of a chronology of facts beginning on June 9, 2014, the Court will construe the date as June 19, 2014.

from the administrative hearing. Plaintiff's case therefore still appears to be pending in state court.

9. Under Younger, a federal court should abstain from enjoining state civil proceedings that implicate important state interests. The Younger doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cnty Ethics Comm. v. Garden State Bar Ass'n, 467 U.S. 423, 431 (1982). Although the doctrine was first articulated to prevent federal courts from enjoining state criminal prosecutions absent extraordinary circumstances, the Supreme Court has since expanded its reach to noncriminal judicial proceedings in which important state interests are involved. Middlesex Cnty Ethics Comm., 467 U.S. at 432. The Third Circuit has articulated three requirements which must be met for a federal court to invoke the Younger abstention doctrine: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Ocean Grove Camp Meeting Ass'n of United Methodist Church v. Vespa-Papaleo, 339 Fed. Appx. 232 (3d Cir. 2009).

10. The requirements appear to have been met in this case. First, there are ongoing state proceedings -- Plaintiff's case

is still pending before the state appellate court. Second, Plaintiff's state proceeding implicates important state interests. Each State "'has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen,'" Shelby Cnty, Ala. v. Holder, 133 S. Ct. 2612, 2623 (2013) (quoting Boyd v. Nebraska ex rel. Thayer, 143 U.S. 135, 161 (1892)), and New Jersey election laws prescribe the specific mechanisms by which a candidate may appear on the state primary ballot. See N.J. Stat. 19:13 (nomination of candidates). Moreover, states have "important regulatory interests" in maintaining the integrity of election schemes that govern the selection and eligibility of candidates for office. Anderson v. Calebrezze, 460 U.S. 780, 788 (1983). That interest is "appreciably greater" when it comes to regulating statewide and local elections. Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 72 (3d Cir. 1999). Finally, to the extent Plaintiff's complaint raises any federal claims, they would be adequately addressed by the Appellatse Division's review of the administrative proceeding. Ocean Grove, 339 Fed. Appx. at 239 ("To satisfy the third prong of Younger, it is sufficient 'that constitutional claims may be raised in state-court judicial review of the administrative proceeding.'") (citing Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 629 (1986)). It appears that once Plaintiff provides the

Appellate Division with a transcript of the administrative hearing, or obtain a waiver of that requirement, the state appeals court will be able to review his claims.

11. Finally, the Court notes that Plaintiff's Motion for Emergency Review invites this federal tribunal to do exactly what the Younger doctrine and its progeny prohibit: to interfere with an ongoing State court proceeding for judicial review of State administrative action. That motion, like the Complaint itself, will be dismissed for lack of subject matter jurisdiction and alternatively as barred by Younger abstention.

12. In sum, and for all of the foregoing reasons, Plaintiff's Complaint will be dismissed without prejudice for failure to comply with Rule 8(a)(1), and for lack of subject matter jurisdiction. The accompanying Order is entered.

**October 7, 2014**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge